UNIVERSITY OF CINCINNATI HOSPITAL
v. EDMOND.

(No. A-8402286 — Decided
April 21, 1986.)

Court of Common Pleas of
Hamilton County.

*Beckman, Weil, Shepardson &
Faller* and *Barbara H. Overmann,* for
plaintiff.

KRAFT, J. This matter came to the
court upon a complaint for declaratory
judgment and temporary relief filed on
March 19, 1984, in which the plaintiff,
University of Cincinnati Hospital, set
forth the following:

· "1. Plaintiff University of Cincinnati Hospital, operates University Hospital, which is located at 234 Goodman Street, Cincinnati, Ohio. Defendant Marthelma Edmond, is female, over the age of 18, and a patient at the University Hospital.

"2. Defendant is presently confined at the University Hospital for injuries suffered as a result of a gunshot wound to her liver.

"3. Defendant was admitted to University Hospital on Thursday, March 15, 1984, and underwent two operations on Friday, March 16, 1984, for treatment of her injuries. The Defendant presently is in critical condition and is in need of both blood and plasma treatment at this time. Unless she is able to receive blood and plasma, her life will be endangered. Failure to give her blood and plasma, as required, will, in the opinion of Plaintiff, result in Defendant's death.

"4. Said Defendant is not presently competent and is unable to understand or give informed consent for the infusion of blood and plasma.

1

"5. If Plaintiff fails to provide the necessary blood and plasma as is needed by Defendant, it may be held responsible for the Defendant's death.

"6. The Defendant has not indicated to Plaintiff her position with regard to receiving blood and plasma, although certain persons related to Defendant have informed Plaintiff that Defendant is a Jehovah's Witness and that she is opposed to receiving either blood or plasma, although necessary to preserve her life.

"7. Because of Defendant's deteriorated physical condition; and because of her inability to give informed medical consent to receive infusions of both blood and plasma, and because Plaintiff has been informed that Defendant is a Jehovah's Witness, yet has no notification from the Defendant as to her position with regard to receiving blood and plasma, the Plaintiff seeks to provide the necessary medical treatment in order to save the Defendant's life, including the infusion of blood and plasma; and time is of the essence; and Plaintiff has no adequate remedy at law and irreparable harm will result to the Defendant if Plaintiff is not permitted to provide the necessary blood and plasma as Defendant's condition require[s]; and the Plaintiff seeks an Order granting permission to administer both blood and plasma to Defendant as is necessary without a written or oral notice to the Defendant because of the immediate and irreparable injury and loss that will result, being the death of the Defendant.

"WHEREFORE, Plaintiff prays for an Order authorizing it to administer the necessary treatment to the Defendant, including the administering of blood and plasma, so as to maintain her life. Plaintiff further seeks, upon final hearing, to have the Court declare the rights of the parties and for such other relief as may be just and equitable."

Counsel for the plaintiff requested an immediate hearing on its prayer for relief. Said hearing was set for March 20, 1984, at 1:45 p.m., the day after the filing of the complaint. At said hearing, plaintiff's counsel was present as well as four adult children of the defendant, one Betty Dockery, age thirty-three; Samuel Edmond, age thirty; Lavada Edmond, age thirty-one; and Nadine West, age twenty-three. The court confirmed that notice of the hearing had been provided the four identified adult children of the defendant. They indicated that no effort had been made by them to secure counsel for the purpose of this hearing and there was no desire to delay the hearing to do so. The identified children of the defendant requested a closed hearing which the court denied as there was nothing presented to suggest that any prejudice would result from an open proceeding. The court did acknowledge, on the record, the presence of at least one photographer in the courtroom and therefore advised the identified children that they along with any other witnesses who testified would individually be given the privilege of indicating their desire not to be photographed as provided in C.P. Sup. R. 11 and Rule 3A(7) of the Code of Judicial Conduct.

The court then proceeded with an evidentiary hearing on the request for relief and permitted the four identified adult children to participate in the examination of all witnesses, to testify themselves and to offer other testimony in behalf of the defendant. At the evidentiary hearing, the plaintiff offered the testimony of Paul Glen, a physician, and George Luthringer, a patient representative of the plaintiff hospital. Plaintiff also offered an affidavit of one Dr. Popp which was refused admission by the court. The court then gave the adult children of the defendant the opportunity to offer evidence. Three of them, Samuel Edmond, Lavada Edmond and Betty Dockery did testify. In addition, they offered the testimony of one Andrew Waters identified as an

Elder of the Church of Jehovah's Witnesses and one Eugene D. Stredrick identified as a member of the congregation of Jehovah's Witnesses. After arguments made by counsel for plaintiff as well as by two of the defendant's children, the court stated the following:

"In preparation for this hearing the Court reviewed the law which it believed might be applicable to the facts as set out in the complaint. First, it is instructive to suggest that no case law directly on point could be found in Ohio. The Court did review the case of *In the Interest of Kenneth Clark, a Minor,* decided by the Court of Common Pleas of Lucas County on September 22, 1962, and reported in [90 Ohio Law Abs. 21,] 21 [O.O.] 2d 86. That decision dealt with a 3-year-old who was a Jehovah's Witness. The issue of blood transfusions was also involved. However, that case is clearly distinguishable from the one before the court today. There are specific statutes in Ohio which deal with the subject of emergency medical and surgical treatment when a minor is involved. [R.C. 2151.33.] There is no such statute when an adult is involved. We have, therefore, had to look elsewhere for assistance.

"The developing and currently prevailing law in the country which applies to an adult who is found to be not competent and not capable of expressing his/her own specific preferences is applicable to this situation. [American Jurisprudence 2d (1979), New Topic Service, Right to Die, Wrongful Life, Section 7, Right to Refuse Lifesaving Medical Treatment.] The evidence herein is that the defendant, when admitted into the plaintiff's hospital, was not capable of expressing her own specific wishes on the subject of the administration of blood transfusions and/or plasma due to the ingestion of excessive amounts of alcohol as well as to a serious gunshot wound. There is no evidence to indicate that she is, at this moment in time, in a condition to personally express her own preferences for medical treatment, while there is ample evidence to indicate that her condition is critical and could become life-threatening at any time. The relevant question in this case therefore becomes whether there is a compelling state interest in life which would justify the state in acting to treat the defendant in a manner which, it is represented by others, is against the defendant's religious beliefs. [*John F. Kennedy Memorial Hospital* v. *Heston* (1971), 58 N.J. 576, 279 A.2d 670.]

"The other point to be recognized is that this is not an issue solely between the state and the patient. Another issue of controversy also exists between the patient, the hospital, its staff and the attending physicians who did not seek her out and upon whom the dictates of her faith will fall as a burden. Hospitals exist to aid the sick and the injured. The medical and nursing professions are consecrated to preserving life. That is their professional creed. A failure to use simple established practices and procedures in the circumstances of this case could be considered malpractice, irrespective of how the law may characterize that failure because of representations by family members of the patient's private religious convictions. A hospital, staff and/or surgeon should not be asked to treat a patient under the strain of knowing that a transfusion cannot be administered even though medically required to save a patient, when that patient is legally incompetent to express an opinion on this treatment. The hospital and its staff should not be required to decide whether the patient is or is not competent to make a judgment upon the need for emergency and immediate medical care. When a hospital and staff are involuntary hosts and their interests are pitted against the reputed beliefs of a patient, it is more reasonable and certainly more equitable to permit the hospital and its staff to pursue their

4

functions according to their professional standards.

"To err in this situation must be to err on the side of life since, although the freedom to believe is absolute, the freedom to act is not.

"This type of case provides no time for extensive research and reflection. There is every reason to conclude from the evidence here that the patient is not competent to make her own decision at this moment and that death is a likely possibility to follow unless blood plasma and other treatment is administered. Therefore, the Court finds there is a compelling state interest justifying the state's refusal to deny the patient vital aid because of the reputed religious beliefs of the patient as presented by her family and church.

"In this situation, plaintiff is entitled, without prior consent of the defendant, at this time to administer blood, plasma, and other necessary treatment to this defendant in order to attempt to maintain her life and to bring her to a condition where she may personally express to the medical staff her wishes concerning future treatment. [Annotation, Patient's Right to Refuse Treatment Allegedly Necessary to Sustain Life (1979), 93 A.L.R. 3d 67, Section 3(d), where religious belief was asserted, and Section 4(b), where patient was held incompetent.]"

In compliance with the court's decision the following order was placed of record on March 20, 1984, at 4:03 p.m.:

"This cause came to be heard upon the application of University of Cincinnati Hospital. It being represented by the Hospital, through its counsel and witnesses, that Marthelma Edmond is presently a patient at the Hospital, and that she is incapable of giving informed consent to treatment, including the administering of blood and plasma, and it further being represented by the physicians in attendance, and Dr. Paul Glen, that they are of the opinion that it is necessary to administer blood and plasma immediately in order to preserve the life and well-being of said Marthelma Edmond, and it further being represented that consent to receive blood cannot be obtained from the patient, and that, furthermore, the closest relatives of the patient, including her daughter and other relatives, object to Defendant's receiving either blood or plasma for reasons which appear on the record,

"IT IS HEREBY ORDERED, that Dr. Martin Popp and Dr. Paul Glen and other medical personnel of the University of Cincinnati Hospital charged with the care and treatment of Marthelma Edmond, may exercise substituted judgment for Marthelma Edmond, and that said physicians may provide the necessary treatment, including the administering of blood and plasma which, in their opinion, is medically necessary to preserve the life of Marthelma Edmond.

"IT IS FURTHER ORDERED that this order is effective March 20, 1984."

A postscript to this decision is reflected in the following entry-terminating order filed June 12, 1984:

"This matter having been heard by the Court on March 20, 1984, on the application of Plaintiff for temporary relief concerning the treatment of Defendant; and this Court having issued an Order of the same date whereby Plaintiff and its personnel were authorized by the Court to exercise substituted judgment for the Defendant to provide the necessary treatment, including the administering of blood and plasma, if in their opinion such was medically necessary to preserve Defendant's life; and this Court now having been advised that Defendant was discharged from the Plaintiff hospital on May 6, 1984, it is hereby ORDERED that the March 20, 1984 Order entered by this Court is terminated."

*Judgment accordingly.*